UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | )<br>)<br>)<br>) Case No.<br>) |
| Plaintiff, | )<br>) |
| v. | ) Complaint for Injunctive and Other<br>) Equitable Relief, Restitution, and Civil |
| K.B. CONCEPTS GROUP, LLC d/b/a APEX ASSET ADVISORS, LLC and KELVIN BURGOS, | ) Monetary Penalties Under the<br>) Commodity Exchange Act<br>)<br>) |
| Defendants. | )<br>) |

Plaintiff U.S. Commodity Futures Trading Commission ("Commission"), by its attorneys, alleges as follows:

## I.     SUMMARY

1. From at least September 2012 and continuing through at least February 2013 (the "Relevant Period"), K.B. Concepts Group, LLC d/b/a Apex Advisors, LLC ("Apex"), by and through the actions of its employees and agents, including but not limited to, Kelvin Burgos ("Burgos") (collectively, "Defendants"), offered to enter into, and conducted an office or business in the United States for the purpose of soliciting or accepting orders for the purchase or sale of precious metals from retail customers on a leveraged or financed basis. The financed transactions did not result in actual delivery of metals to customers   As a result, these transactions constituted illegal, off-exchange retail commodity transactions and Defendant Apex acted as an unregistered Futures Commission Merchant ("FCM"). By this conduct, Defendants

have engaged, are engaging, or are about to engage in conduct that violates 7 U.S.C. §§ 6(a) and 6d(a)(1) (2012).

2.      Burgos controlled Apex throughout the Relevant Period and failed to act in good faith or knowingly induced Apex's violations alleged herein.  Burgos is therefore liable for Apex's violations as a controlling person of Apex pursuant to 7 U.S.C. § 13c(b).

3.      At all relevant times, the acts and omissions of Burgos and other Apex representatives were committed within the scope of their employment, agency, or office with Apex.  Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2016), Apex is liable as a principal for the actions and omissions of Burgos and any other employee or agent of Apex in violation of the Commodity Exchange Act, (the "Act"), 7 U.S.C. §1 *et seq*.

4.      Accordingly, pursuant to 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices, to compel compliance with the Act, and to further enjoin them from engaging in any commodity-related activity.

5.      In addition, the Commission seeks civil monetary penalties, restitution, and remedial ancillary relief, including but not limited to, trading and registration bans, disgorgement, rescission, pre-judgment and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6.      Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

7.      7 U.S.C. § 13a-1, authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or

is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

8.      Pursuant to 7 U.S.C. §§ 2(c)(2)(D) and 13a-1, the Commission has jurisdiction over the conduct and transactions at issue in this case.

9.      Pursuant to 7 U.S.C. § 13a-1(e), venue properly lies with the Court, because Defendants transacted business in this District, and certain transactions, acts, and practices alleged in this Complaint occurred, or are occurring, within this District.

### III.   PARTIES

**A.    Plaintiff**

10.     Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*.

**B.    Defendants**

11.     Defendant **K.B. Concepts Group LLC** was a Florida limited liability company formed in January 2009 and its fictitious name, **Apex Asset Advisors LLC**, was registered with the Florida Secretary of State in August 2011.  During the Relevant Period, K.B. Concepts Group LLC did business as Apex Asset Advisors.  K.B. Concepts Group was administratively dissolved in September of 2014.  Its principal place of business was in Doral, Florida.  Neither K.B. Concepts Group nor Apex has ever registered with the Commission in any capacity.

12.     Defendant **Kelvin Burgos** is a resident of Florida.  Burgos was Apex's president, controlling person, and managing member responsible for its day-to-day operations.  He also served as the registered agent of Apex.  Burgos has never been registered with the Commission in any capacity.

3

## IV.     RELATED ENTITIES

13.     Apex introduced customers to **Hunter Wise Commodities, LLC** ("Hunter Wise"), which held itself out as a precious metals wholesaler and clearing firm. Hunter Wise purported to confirm the execution of customer off-exchange retail commodity transactions.

14.     Hunter Wise was organized as a California limited liability company in July 2007 and was registered to do business in Nevada. It maintained business addresses in Las Vegas, Nevada and Irvine, California. On its website, Hunter Wise held itself out as "a physical commodity trading company, wholesaler, market maker, back-office support provider, and finance company." Hunter Wise purported to offer, enter into, and confirm the execution of retail commodity transactions involving gold, silver, platinum, palladium, and copper throughout the United States using a network of telemarketing solicitors such as Apex that it referred to as "dealers."

15.     On February 19, 2014, a court in this District, in an action captioned *CFTC v. Hunter Wise Commodities, LLC*, held that Hunter Wise and other defendants violated 7 U.S.C. §6(a), the prohibition against off-exchange trading of retail commodity transactions like the ones at issue here. The court granted summary judgment in favor of the Commission. 1 F. Supp. 3d 1311, 1320-1322 (S.D. Fla. 2014).

## V. STATUTORY BACKGROUND

16. 7 U.S.C. §2(c)(2)(D), gives the Commission jurisdiction over "any agreement, contract, or transaction in any commodity" that is entered into with, or offered to, a non-eligible contract participant ("ECP") "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis" ("retail commodity transactions" or "financed precious metals transactions") with respect to conduct occurring on or after July 16, 2011, subject to certain exceptions not applicable here. 7 U.S.C. § 2(c)(2)(D), makes 7 U.S.C. §6(a), applicable to retail commodity transactions "as if" such transactions are contracts for the sale of a commodity for future delivery.

17. 7 U.S.C. § 1a(18)(xi) defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.

18. 7 U.S.C. § 6(a), in relevant part, makes it is unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

19. 7 U.S.C. § 6d(a)(1), in relevant part, provides that it shall be unlawful for any person to be a FCM unless such person shall have registered with the Commission as an FCM. In pertinent part, 7 U.S.C. § 1a(28) defines an FCM as "an individual, association, partnership, corporation, or trust . . . engaged in soliciting or in accepting orders for . . . any agreement,

contract, or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i) [of the Act]; and accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee or secure any trades or contracts that result or may result therefrom ."

## VI. FACTS

20. During the Relevant Period, Defendants offered to enter into, executed and confirmed the execution of financed precious metals transactions with persons who were not ECPs. Apex's employees solicited individuals to invest in financed precious metals transactions and purported to execute those transactions though Hunter Wise.

21. Apex's employees conducted nearly all of their solicitations by telephone. Based on the solicitations by Apex employees and documents customers received from Apex, customers understood that to purchase a certain quantity of metal, customers needed to deposit a percentage of the total metal value and arrange for a loan for the remaining amount. Hunter Wise provided the financing for the loans to the customers.

22. After a customer placed money with Apex, Apex placed an order with Hunter Wise to purchase metal for the customer. Apex then transmitted funds to Hunter Wise. Hunter Wise provided back office support services to Apex.

23. Apex charged customers commissions and fees for purchasing the metal and interest on loans to buy metal. Hunter Wise provided Apex's share of the commissions and fees to Apex after it received the customers' funds from Apex.

24. The commissions and fees provided by Hunter Wise to Apex flowed through a bank account in the name of Apex Credit, LLC, which Burgos established and controlled.

25. In the financed precious metals transactions at issue, Apex's customers did not take delivery of precious metals within 28 days. In fact, there was no actual delivery of precious metals.

26. During the Relevant Period, Apex collected approximately $456,977 from at least 10 customers in connection with financed precious metals transactions. Of this amount, approximately $156,783 was paid to Apex in the form of commissions, markups, storage fees, and interest charges.

27. Apex and Hunter Wise never bought, sold, loaned, stored, or transferred any physical metals for the off-exchange financed precious metals transactions at issue. Likewise, Apex and Hunter Wise never delivered any precious metals to any customers in connection with the financed metals transactions at issue.

28. At all times during the Relevant Period, the financed metals transactions that Apex entered into with its customers were not made or conducted on, or subject to, the rules of any board of trade, exchange or contract market.

29. At all times during the Relevant Period, Burgos was the managing member, president and controlling person of Apex. Burgos exercised control over the day-to-day operations of Apex. Burgos was a signatory on Apex's bank accounts and entered into agreements with Hunter Wise on behalf of Apex.

## VII. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I
### ILLEGAL OFF-EXCHANGE TRADING
### Violations of 7 U.S.C. § 6(a)

30. Paragraphs 1 through 29 of this Complaint are realleged and incorporated herein by reference.

31. During the Relevant Period, the retail commodity transactions described in this Complaint were offered and entered into by Apex and Burgos (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, (b) with persons who are not ECPs or eligible commercial entities as defined by the Act, and (c) not made or conducted on, or subject to, the rules of any board of trade, exchange, or contract market.

32. The precious metals discussed in this complaint are commodities as defined by 7 U.S.C. § 1a(9).

33. The retail commodity transactions did not result in actual delivery within 28 days. In fact, there was no actual delivery of precious metals.

34. Pursuant 7 U.S. C. § 2(c)(2)(D)(iii), the retail commodity transactions alleged herein are subject to 7 U.S. C. § 6(a), as if they are contracts of sale for future delivery.

35. As set forth above, during the Relevant Period, Defendants violated 7 U.S.C. § 6(a) by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting or accepting orders for, or otherwise dealing in, transactions in, or in connection with, retail commodity transactions.

36. Each offer to enter into, execution, confirmation, solicitation, or acceptance of an order for a retail commodity transaction with a non-ECP customer made during the Relevant Period is alleged in this Complaint as a separate and distinct violation of 7 U.S.C. § 6(a).

37. Burgos directly or indirectly controlled Apex and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting Apex's violations of 7 U.S.C. § 6(a). Therefore, pursuant to 7 U.S.C. § 13c(b), Burgos is liable for each of Apex's violations of 7 U.S.C. § 6(a) as a controlling person of Apex.

38. The acts and omissions of Burgos and other employees or agents of Apex described in this Complaint were done within the scope of their employment, agency with Apex. Therefore, pursuant to 7 U.S.C § 2(a)(1)(B) and 17 C.F.R. § 1.2, Apex is liable as a principal for each act, omission, or failure of Burgos and Apex's other employees and agents constituting violations of 7 U.S.C. § 6(a).

## COUNT II
## FAILURE TO REGISTER
### Violations of 7 U.S.C. § 6d(a)(1)

39. Paragraphs 1 through 38 of this Complaint are re-alleged and incorporated herein by reference.

40. During the Relevant Period, Apex, through its managers, employees, and agents, acted as an FCM by soliciting and accepting orders for agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(D)(i) (*i.e.,* retail commodity transactions) and, in or in connection with those transactions, accepted approximately $456,977 from its customers.

41. 7 U.S.C. § 6d(a)(1), provides that it shall be unlawful for any person to be an FCM unless such person shall have registered with the Commission as an FCM.

9

42.     During the Relevant Period, Apex failed to register with the Commission as an FCM, and therefore violated 7 U.S.C. § 6d(a)(1).

43.     Burgos directly or indirectly controlled Apex and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Apex's violations of 7 U.S.C. § 6d(a), alleged in this Complaint.  Pursuant to 7 U.S.C. § 13c(b), Burgos is therefore liable for each of Apex's violations of 7 U.S.C. § 6d(a)(1).

44.     The acts and omissions of Burgos and other managers, employees, agents, and other persons acting for Apex described in this Complaint were done within the scope of their employment, agency, or office with Apex.  Therefore, Apex is liable as a principal for each act, omission, or failure of Burgos and Apex's other managers, employees, agents, and other persons acting for Apex, constituting violations of 7 U.S.C. § 6d(a)(1), pursuant to 7 U.S.C § 2(a)(1)(B) and 17 C.F.R. § 1.2.

## VII.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding that Defendants violated 7 U.S.C. §§ 6(a) and 6d(a)(1);

B.     An order of permanent injunction permanently restraining, enjoining and prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct in violation of 7 U.S.C. §§ 6(a) and 6d(a)(1);

C.     An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from directly or indirectly:

(1)     Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40));

    (2) Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3(yy)) for their own personal account or for any account in which they have a direct or indirect interest;

    (3) Having any commodity interests traded on their behalf;

    (4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    (5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    (6) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9);

    (7) Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9); and

    (8) Engaging in any business activities related to commodity interests.

  D. An order requiring that Defendants, as well as any successors, disgorge to any officer appointed or directed by the Court all benefits received from the acts or practices that constitute violations of the Act as described herein, including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, plus pre-judgment interest thereon from the date of such violations, and post-judgment interest;

E.     An order requiring Defendants and any of their successors to make full restitution to every person or entity whose funds Defendants received or caused another person or entity to received pursuant to such procedure as the Court may order, to every customer whose funds Defendants received or caused another person or entity to receive as a result of the acts and practices described herein which constitute violations of the Act, pre-judgment interest from the date of such violations;

F.     An order directing Defendants, as well as any successors, to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constitute violations of the Act, as described herein;

G.     An order requiring Defendants, as well as any successors, to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the greater of (1) triple the monetary gain to Defendants for each violation of the Act; or (2) $140,000 for each violation committed on or after October 23, 2008;

H.     An order requiring Defendants, as well as any successors, to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.      An order providing such other and further relief as the Court may deem necessary and appropriate under the circumstances.

Dated:  September 20, 2016

Respectfully submitted,

/s/ James A. Garcia
James A. Garcia
FL Special Bar #A5502221
jgarcia@cftc.gov
Michael Solinsky
FL Special Bar #A5501936
msolinsky@cftc.gov
Division of Enforcement
U.S. Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Telephone: (202) 418-5362 (Garcia)
Telephone: (202) 418-5384 (Solinsky)
Fax: (202) 418-5937

Attorneys for Plaintiff